JOSEPH P. RUSSONIELLO (CABN 44332 )
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

GARTH HIRE (CABN 187330)
Assistant United States Attorney

  1301 Clay Street, Suite 340-S
  Oakland, California 94612-5217
  Telephone: (510) 637-3929
  Facsimile:  (510) 637-3724
  E-Mail:     Garth.Hire@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0349 DLJ |
| Plaintiff, | UNITED STATES' APPEAL OF MAGISTRATE'S PRE-TRIAL RELEASE ORDER FOR DEFENDANT LEDON JOHNTTAE RAMSEY |
| v. | |
| LEDON JOHNTTAE RAMSEY | |
| Defendant. | |

# I.

## INTRODUCTION

Plaintiff United States of America, by and through its counsel of record, hereby files this appeal of Magistrate Judge Wayne D. Brazil's order granting pre-trial release to defendant Ledon Johnttae Ramsey ("defendant"). Defendant is charged in an indictment with using a communications facility (telephone) to commit/facilitate narcotics trafficking; distribution of crack cocaine; and distribution of crack cocaine with 1,000 feet of a high school and public housing in violation of 21 U.S.C. §§ 843(b), 841(a)(1), (b)(1)(B)(iii), and 860, respectively.

As a matter of law, defendant is presumed to be both a danger to the community and a flight risk and has failed to rebut those presumptions. Defendant must therefore be detained pending trial. Even if defendant can rebut the presumptions of danger and flight, the government has nonetheless demonstrated by clear and convincing evidence that defendant is a danger to the community and by a preponderance of the evidence that defendant is a flight risk. As more fully explained below, defendant should be detained pending trial because:

- defendant is recorded on video and audio distributing crack cocaine and thus the evidence of guilt is overwhelming;

- during a recent search of defendant's apartment he possessed marijuana for sale, a firearm, various calibers of ammunition, a bulletproof vest, a police scanner, and a machete;

- in 2007 there was an anonymous report to his apartment manager that defendant engaged in a shootout in the apartment complex where he lived and shell casings were found outside his apartment;

- defendant faces a <u>mandatory minimum sentence of five years imprisonment</u> if convicted in this case and if defendant fails to satisfy the requirements for safety valve relief;

- defendant continues to use marijuana and has already been cited while at the halfway house for violating his curfew and lied to his pre-trial services officer about the citation;

1        •     a $250,000 unsecured bond in which one of the sureties has a criminal history

2             relating to narcotics and which imposes no curfew or electronic monitoring is not

3             sufficient to adequately safeguard the community and secure defendant's

4             appearance; and

5        •     at 27-years old, defendant has no record of legal steady employment.

6 Thus, not only does the law presume that defendant is both a danger to the community and a

7 flight risk based on the instant charges, but the facts and circumstances of defendant's criminal

8 livelihood also show him unequivocally to be a danger to the community and a flight risk.

9 Defendant must therefore be detained pending trial.

10 I.

11 **FACTS AND PROCEDURAL HISTORY**

12 **A.**   **Defendant Distributed 11.4 Grams of Crack Cocaine Within 1,000 Feet of a**

13       **High School and Public Housing**

14       The Federal Bureau of Investigation (FBI) recently conducted an investigation of a

15 Richmond-based gang known as the "Manor Boyz." According to the FBI and Richmond Police

16 Department (RPD), the Manor Boyz are responsible for much of the violence and drug

17 trafficking that occur in and around the housing complex formerly known as Kennedy Manor and

18 now known as Monterey Pines. Defendant Ramsey was known to the FBI and RPD as a member

19 of this group who engaged in acts of violence and drug trafficking. A redacted certified copy of

20 defendant's California Department of Motor Vehicles record is attached as Exhibit A. As

21 described below, the FBI, through the use of a confidential informant (CI), purchased crack

22 cocaine from defendant at his apartment. Attached as Exhibit B is a copy of the FBI report

23 describing the controlled purchase.

24       At approximately 10:15 a.m. on April 15, 2008, the CI called defendant at (510) 837-

25 1800 in a consensually recorded call. The subscriber of that mobile telephone is Ledon Ramsey.

26 Attached as Exhibit C is a copy of the subscriber information for this telephone. During the call,

27 the CI asked Ramsey if he was ready to sell "the half." Ramsey said that he was and told the CI

28 to come get it right now. The CI then asked how much it would cost. Ramsey replied, "three-

2

fifty just like everybody else." She then asked "three-fifty" and he again responded, "Like everybody else." The CI then asked how much it would weigh. Ramsey said it would weigh "fourteen" (meaning fourteen grams, which is roughly one half ounce).[1]

At approximately 1:20 p.m., the CI went to Ramsey's apartment in Richmond, California. While inside the apartment, the CI provided Ramsey with cash and in return he provided the CI with 11.4 grams of crack cocaine. The transaction was recorded by a covert audio/video recording device worn by the CI. The video clearly shows Ramsey's face and also shows him handing a plastic baggie of crack cocaine to the CI and counting the money she provided to him. Attached as Exhibit D are images from the video recording of the narcotics transaction and the drugs purchased. The images show that defendant is wearing the same lanyard that he wore in his driver's license photograph. Defendant's apartment is approximately 580.8 feet from John F. Kennedy High School and approximately 300.96 feet from the Friendship Manor Development, which is owned by the Richmond Public Housing Authority.

## B.    Defendant Possessed Marijuana for Sale, a Firearm, Various Calibers of Ammunition, a Bulletproof Vest, a Police Scanner, and a Machete

On May 25, 2008, just over one month from the date of defendant's sale of crack cocaine to the informant, RPD officers conducted a search of defendant's apartment and found narcotics, a firearm, ammunition, and other items indicative of violence and drug trafficking. Attached as Exhibit E is a redacted copy of the police report. On that date, RPD officers were looking for a man with who had just fired a gun. The defendant and several other individuals were congregating in the parking lot of the apartment complex. The defendant gave consent for the officers to search his apartment for the gunman. Inside the front room of the apartment officers saw in plain view a bulletproof vest, five individually packaged baggies of marijuana, a digital scale, a package of small 1"x1" plastic baggies, and cash. Attached as Exhibit F are photographs of these items. Inside defendant's daughter's bedroom the officers found: a 16-gauge bolt action shotgun on a closet shelf; 16-gauge, .38, .25, .22., and .223 ammunition, a non-functioning radio

---

[1]    The government will play this recording at the bail appeal hearing if so requested by the Court and will provide the Court with the CD upon request.

3

scanner, and a machete. Attached as Exhibit G are photographs of these items. Finally, officers located a backpack in Ramsey's bedroom containing a box of .38 caliber ammunition. Attached as Exhibit H is a photograph of this item. Inside defendant's vehicle police recovered a 2"x4" baggie of marijuana near the center console of the vehicle as well as a bag that smelled of marijuana and contained a digital scale and a box of sandwich bags.

This is not the first time defendant has been associated with guns and violence. On February 21, 2007, there were multiple 911 calls reporting that gun shots were heard in the area of defendant's apartment complex in Richmond, California (the same one from which he sold the CI crack cocaine and possessed the drugs, weapons, and ammunition described above). The following day, an RPD officer investigated and saw that an apartment had been hit by gunfire. The RPD officer observed that there appeared to be a gunfight between two individuals because shots were fired from the north and south side of the building.    The apartment manager told the RPD officer that he had received an anonymous call the night before that the two shooters were Ledon Johnttae Ramsey and another individual (who was recently murdered in Pinole). Ramsey's apartment is right next to the location of the shooting. A redacted copy of the police report is attached as Exhibit I.

**C.    Defendant Confessed in a Post-Arrest Interview to Selling Crack Cocaine**

On May 28, 2008, a federal grand jury indicted defendant and a warrant was issued for his arrest. During his post-arrest interview, defendant waived his *Miranda* rights and agreed to speak with an FBI agent and an RPD detective. During that interview he admitted selling crack cocaine to the informant, admitted selling marijuana, and admitted having previously sold crack cocaine as a teenager.

**D.    Defendant's Detention Hearings, Marijuana Use, Curfew Violation, and Order of Pre-trial Release**

Defendant made his initial appearance in federal court on June 2, 2008. On June 6, 2008, defendant appeared before Judge Brazil for a detention hearing. The government moved for detention because defendant is a danger to the community and a flight risk and is presumed so as a matter of law. Judge Brazil ordered that defendant be released to Cornell Corrections – a non-

4

secure, non-custodial "halfway house" – following the posting of an unsecured $250,000 bond signed Movita Thomas (defendant's "cousin"), LaEdward Thomas (Movita's husband), Tashami Willis (defendant's "cousin"), and Kamika Adanandus (defendant's "cousin").[2] Defendant then entered the halfway house, where he promptly tested positive three times for marijuana and violated curfew, as explained below.

Urine specimens were collected from defendant on June 9, June 14, and June 22, 2008. On each of those occasions, defendant tested positive for marijuana and the presence of THC was higher on the second sample. In a letter to United States Pretrial Services Officer Victoria Gibson dated June 25, 2008, Pat Pizzo, Director of Toxicology, Kroll Laboratories, stated: "It is my opinion that this donor continues to use marijuana. I base this opinion on the increase in the normalized level of drug present in the urine specimen collected on 6/14/08 and a urine half life of 48 hours." (Emphasis added). Attached as Exhibit J is a copy of correspondence between Kroll Laboratories and Ms. Gibson.

On July 10, 2008, Cornell Corrections cited defendant for being outside of his room with other residents at 10:05 p.m. in violation of curfew. According to the incident report, defendant was provided a copy of the report. Nonetheless, when Ms. Gibson asked defendant after the incident if he had been "written up" by Cornell Corrections, defendant lied to her and said that he had not. He claims that he thought he did not have to report this to her because the matter was "pending." A copy of the incident report is attached as Exhibit K.

On July 17 and July 21, 2008, defendant appeared before Judge Brazil to renew his motion for pre-trial release. On July 21, 2008, Judge Brazil granted defendant's request for pre-trial release and ordered him released to the custody of Movita and LaEdward Thomas to reside in their home in Antioch. Movita Thomas, LaEdward Thomas, and Kamika Adanandus all executed an unsecured $250,000 bond. (Mr. Willis was removed as a surety due to his extensive criminal record). No curfew was set and no electronic monitoring was required. Defendant is

---

[2]    For some reason, the bond and the subsequent minutes of the proceedings continue to describe Movita and LaEdward Thomas as defendant's aunt and uncle. This is not accurate. As stated on the record at the most recent bail review hearing, Ms. Thomas is Mr. Ramsey's mother's cousin, not Mr. Ramsey's aunt.

thus free to go to the same area of Richmond where he sells drugs and to be there at any time of the day or night. The government requested that the release order be stayed and Judge Brazil granted that request and instructed the government to file its appeal by 5 p.m. on July 22, 2008.

### III.

### DEFENDANT IS A DANGER TO THE COMMUNITY AND A FLIGHT RISK AND SHOULD BE DETAINED PENDING TRIAL

#### A.    Standard of Review is De Novo

"[A] district court's review of a magistrate's detention order is to be conducted without deference to the magistrate's factual findings." *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). Thus, this Court must make its own independent determination regarding defendant's detention status.

#### B.    As a Matter of Law, Defendant is Presumed a Danger and a Flight Risk

The Bail Reform Act of 1984 ("the Act") permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985); *United States v. Kouyoumdjian*, 601 F. Supp. 1506, 1508-10 (C.D. Cal. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

In cases involving narcotics offenses, the Act established a rebuttable presumption that a defendant is both a flight risk and a danger to the community. 18 U.S.C. § 3142(e); *United States v. Cox*, 635 F. Supp. 1047, 1054 (D. Kan. 1986) *citing* H.R. Rep. at 20, U.S.C.C.A.N. at 3203 (Congress also noted that persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus "pose a significant risk of pretrial "recidivism."). That presumption exists if there is "probable cause" that the defendant committed a narcotics offense for which a maximum term of imprisonment of ten years or more

6

is prescribed. 18 U.S.C. § 3142(e). A grand jury indictment, as returned in this case, establishes "probable cause" under 18 U.S.C. § 3142(e) and gives rise to the Act's presumptions. *United States v. Vargas,* 804 F.2d 157 (lst Cir. 1986); *United States v. Suppa,* 799 F.2d 115 (3d Cir. 1986); *United States v. Contreras,* 776 F.2d 51 (2d Cir. 1985). Once the presumption is triggered, the defendant has the burden of producing or proffering evidence to rebut the presumption. *United States v. Hare,* 873 F.2d 796, 798 (5th Cir. 1989); *United States v. King,* 849 F.2d 485, 488 (11th Cir. 1988).

If the defendant proffers evidence to rebut the presumption, the Ninth Circuit has identified several relevant statutory factors in determining whether pretrial detention is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor,* 785 F.2d 755 (9th Cir. 1986); *Motamedi,* 767 F.2d at 1407.

Congress intended that the statutory presumptions would have a practical effect. *United States v. Jessup,* 757 F.2d 378, 382 (1st Cir. 1985). The presumptions do not disappear when a defendant meets his or her burden of producing rebuttal evidence. *United States v. Perez-Franco,* 839 F.2d 867, 870 (1st Cir. 1986); *United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir. 1986). The presumptions remain in the case as evidentiary findings militating against release, to be weighed along with other evidence relevant to the factors listed in Section 3142(g). *Dominguez,* 783 F.2d at 707. Indeed, the Act's presumption should be added as a significant factor that supports pretrial detention under both rationales for detention. *See United States v. Perez-Franco,* 839 F.2d 867, 870 (1st Cir. 1988) (presumption a factor militating against release); *United States v. Cook,* 880 F.2d 1158, 1160 (10th Cir. 1989)(same).

C.    **Defendant Has Not Rebutted the Presumption that He Is a Danger to the Community and a Flight Risk**

Defendant has presented no facts which are sufficient to rebut the legal presumption that

he is a danger and a flight risk. The only facts presented by defendant thus far is that he has no criminal record and three people are willing to sign an unsecured $250,000 bond (even though there is no indication any of them could ever pay that amount – or any amount for that matter). Closer examination of these proposed sureties reveals them to be unsuitable and thus their promises to pay the bond should defendant flee or re-offend do not come close to rebutting the presumptions of danger and flight. Indeed, their personal histories buttress, rather than rebut, the presumptions.

Movita Thomas is disabled and unemployed. This makes her promise to pay $250,000 should defendant re-offend or flee meaningless and in no way provides defendant any incentive to appear for court or conform his conduct to the law. LaEdward Thomas works part-time at a warehouse. In addition, he has previously been convicted of misdemeanor carrying a loaded firearm in public and felony possession of a narcotic controlled substance. Both convictions were later set aside pursuant to California Penal Code Section 1203.4. Mr. Thomas was also arrested in 2002 for rape, although he claims that was a false accusation and it does not appear that any charges were filed. A record of Mr. Thomas' criminal history is attached as Exhibit L. Mr. Thomas is simply not the fully employed, law abiding person who could properly be expected to keep defendant from committing more crimes (especially drug crimes) or fleeing; and if defendant did either, Mr. Thomas has little to no ability to pay the bond. There is no indication that Ms. Adanandus, many of whose relatives are associated with the Manor Boyz, could pay the bond either.

These sureties are insufficient to rebut the presumptions of danger and flight. There is nothing about the fact that friends with criminal records and few financial resources are willing to sign a $250,000 bond that will prevent defendant from continuing to sell narcotics, engaging in other crime, and fleeing. Even if these facts did rebut the presumptions that defendant is a danger and a flight risk, the statutory factors contained in 18 U.S.C. § 3142(g) clearly establish that he is a danger and a flight risk and should be detained pending trial.

///

///

8

**D.    Statutory Factors Requiring Detention**

    **1.    Nature and Circumstances of the Offense Charged**

        **(18 U.S.C. § 3142(g)(1))**

This factor strongly favors detention. The grand jury has indicted defendant for distributing 11.4 grams of crack cocaine within 1,000 feet of a high school and public housing, distribution of crack cocaine, and using a telephone to do so. Defendant faces a five-year mandatory minimum sentence unless he can satisfy all of the criteria of the safety valve.

    **2.    Weight of the Evidence Against Defendant (18 U.S.C. § 3142(g)(2))**

This factor weighs so heavily in favor of detention it is <u>dispositive</u>. Defendant was recorded on video and audio distributing 11.4 grams of crack cocaine within 1,000 feet of a high school and public housing. He arranged the narcotics transaction using a telephone subscribed in his own name and even told the informant she would have to pay the same price for the crack cocaine as *everyone else*, clearly indicating that she is not his only customer.[3] There is simply no defense to the charges and defendant's conviction is a virtual certainty. Thus, not only does the serious nature of the charge show defendant to be a danger to the community, but given the irrefutable quality of the evidence defendant has every incentive to flee the jurisdiction and perhaps find a way to reimburse his sureties for whatever paltry sum they would have to pay. This would certainly seem preferable to serving a lengthy prison sentence.

    **3.    Defendant's History and Characteristics (18 U.S.C. § 3142(g)(3)(A))**

Defendant's history and characteristics demonstrate that defendant must be detained pending trial to protect the community and prevent defendant from fleeing. Defendant, based on his sale of crack cocaine to the informant, his statement to her that she must pay the same price as everyone else, and the marijuana found by RPD in his apartment and in his vehicle packaged for sale, is clearly a multi-substance drug dealer with gang ties. Worse yet, he conducts his narcotics trafficking activity in close proximity to a high school and public housing with blatant

---

[3]    Any argument that defendant has a viable entrapment defense is without merit. Defendant's statement to the informant and his post-arrest confession clearly indicate he sells crack cocaine to others and has sold crack cocaine before. Defendant's demeanor on the telephone and in the video is relaxed and in control. Thus, defendant was clearly predisposed to commit this crime and was not induced by the government to commit this crime.

9

1  disregard for public safety.

2        Even though defendant has no history of adult arrests or convictions, he also has no

3  history of stable employment. According to the Pretrial Services Report (PTSR), defendant has

4  largely been unemployed or acting as an in-home caregiver for the past few years. (PTSR at 4).

5  The jobs he did have lasted mere months. (PTSR at 5). Nevertheless, defendant has three cars.

6        **4.    Defendant Poses a Serious Danger to the Community if Released**

7        As the nature of defendant's offense and other law enforcement contact show, defendant

8  has demonstrated throughout his life that he cannot conform his conduct to the law. There is

9  simply no reason to believe that he will do so now simply because friends and family with no

10  financial resources have made an illusory promise to pay $250,000 they do not have and when

11  there are no restrictions whatsoever to keep defendant from going back to Richmond and

12  returning to his drug dealing lifestyle.

13                                          **IV.**

14                                   **CONCLUSION**

15        For these reasons, the government respectfully requests that this Court find that defendant

16  has failed to rebut the statutory presumptions that he is a danger and a flight risk and order him

17  detained pending trial. Alternatively, the government asks that this Court find that the

18  government has established by clear and convincing evidence that defendant is a danger to the

19  community and by a preponderance of the evidence that he poses a flight risk and that there are

20  no conditions or combination of conditions that will reasonably assure the safety of the

21  community and his appearance in court.

22  DATED: July 22, 2008                    Respectfully submitted,

23

24                                          JOSEPH P. RUSSONIELLO
                                            United States Attorney
25
                                                   /s/
26                                          GARTH HIRE
                                            Assistant United States Attorney
27

28

                                             10

# EXHIBIT A

# CALIFORNIA DEPARTMENT OF MOTOR VEHICLES

**FOR USE ONLY AS AUTHORIZED BY DMV**



DRIVERS LICENSE          EXP DATE:
CLASS1:                          CLASS2:

## LEDON JOHNTTAE RAMSEY

DOB:
SEX:
HAIR:                HEIGHT:
EYES:                WEIGHT:
APP DATE:       **04/08/2008**        APP OFFICE:      **556**
ISSUE DATE:    **--PENDING--**       ISSUE OFFICE:   **--PENDING--**
PHOTO DATE:    **04/08/2008**        PHOTO OFFICE: **556**
PHOTO SEQ #:  **4731**
TECHNICIAN ID: **44**                TYPE APP:          **D**
RSTR:
ENDORS:

State of California
DEPARTMENT OF MOTOR VEHICLES

I hereby certify that the document to which this is affixed
is a true copy of the records of the Department of Motor Vehicles.

Motor Vehicle File No.

Date _5/15/08_      Signed _____

In accordance with Section 1813 CVC, the above employee of the
Department of Motor Vehicles has been authorized to prepare
under seal and certify copies of records of this Department.

Machine: RWS1
05/07/2008 08:26:35.518

# EXHIBIT B

.

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    04/16/2008

On April 15, 2008, at approximately 1:20 p.m., an F.B.I.
controlled narcotics purchase was conducted at ██████████
██████████████████ (hereafter referred to as the "residence"), an
███████████████the Monterey Pines Apartment Complex, Richmond,
California.  Agents and officers involved in the surveillance of
the purchase included F.B.I. Special Agents Michael Day and Gregory
Eckhart, TFO's Aaron Pomeroy and Jeff Palmieri, and Richmond Police
Officer Anthony Mikell.

The transaction was conducted between an FBI Confidential
Human Source (hereafter referred to as CHS), and LEDON RAMSEY,
a.k.a. "BAM."  The attempted transaction was audio and video
recorded.

A search of CHS was performed at a rendezvous point prior
to sending CHS into the area where the narcotics transaction would
take place.  The source had no money or narcotics on his/her person
except for the $400.00 CHS was given by agents to make the
transaction.  Surveillance of the CHS was attempted by the above-
mentioned law enforcement agents throughout the buy.  After making
the transaction, and upon returning to the rendezvous point, CHS
handed SA Day a plastic sandwich bag containing several small
chunks of suspected cocaine base.  CHS was once again searched.
CHS had no other narcotics or money on his/her person.  CHS was
then debriefed as to the events of the transaction.  CHS provided
the following information:

As directed by Agents, CHS had spoken with RAMSEY the
previous night and told him that he/she would be coming through the
next day around 10:00 a.m. to buy a half ounce of cocaine base.
RAMSEY told CHS that he would have it ready for him/her.

On the morning of April 15, 2008, at approximately 10:15
a.m., CHS made a consensually monitored phone call to RAMSEY at
phone number (510) 837-1800.  RAMSEY answered the phone.  CHS asked
him if he was ready to sell the "half."  RAMSEY said that he was
and told CHS to come get it right now. CHS told RAMSEY that he/she
was in Oakland and would be there in a little bit.  CHS then asked
how much it would cost.  RAMSEY replied, "$350.00, just like
everybody else."  CHS then asked how much it would weigh.  RAMSEY
told CHS that it would weigh "14."

---

Investigation on    04/15/2008    at  Richmond, California

File # ██████████████████                    Date dictated  N/A

by    SA Michael Day:mjd; SA Gregory Eckhart;
      TFO Aaron Pomeroy; CDC SA Charles Dangerfield

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

RAMSEY-012

FD-302a (Rev. 10-6-95)



Continuation of FD-302 of _____ N/A _____, On 04/15/2008 , Page ___ 2 ___

      At approximately 10:38 a.m, CHS called RAMSEY back and told him that she was ready to come get it.  The call went to voicemail.  Shortly thereafter, RAMSEY called CHS back and told him/her that it would be another twenty minutes before he would have the narcotics ready.

      At approximately 11:10 a.m., CHS called RAMSEY back to see if he was ready.  RAMSEY said that he was waiting for someone to call him back after that person got his haircut.

      At approximately 11:38 a.m., RAMSEY called CHS and told him/her that he was going to get it (the narcotics) right now.·

      At approximately 11:58 a.m., CHS called RAMSEY to let him know that he/she was on his/her way.  RAMSEY told CHS that he was on the freeway.

      At approximately 12:30 p.m., CHS called RAMSEY to see if he was ready.  RAMSEY told CHS that it would be another minute.

      At approximately 1:10 p.m., RAMSEY called CHS and told him/her that he was back.  CHS told RAMSEY that he/she would be over there shortly.

      Agents then drove CHS to the apartment complex and dropped him/her off.  Once CHS was out of the car, he/she called RAMSEY to let him know that he/she would be there in a second.  RAMSEY told CHS that he was heading to CHS' apartment with the narcotics.  CHS told RAMSEY that he/she was almost at his house.  RAMSEY told CHS that he would meet him/her at the his apartment (the residence).

      As CHS approached the residence, he/she called RAMSEY again to let him know that CHS would be coming in.  CHS then walked through the front door of the residence.  RAMSEY approached CHS from the kitchen of the residence.  RAMSEY had a baggy containing cocaine base in his hand.  He held it up and showed it to CHS.  He then handed the baggy to CHS and told him/her that it was all there.  CHS asked RAMSEY to weigh it, but he told him/her that he didn't have a scale.

      CHS then handed RAMSEY $400.00.  RAMSEY took the money over to the sink and started counting it.  After he finished counting it, RAMSEY told CHS that it was cool.

FD-302a (Rev. 10-6-95)



Continuation of FD-302 of ____N/A_____ , On _04/15/2008_ , Page ___3___

       CHS then left the apartment and returned to a previously designated rendezvous location.  There, CHS was picked up by agents.

       Once in the car, CHS realized that he/she gave RAMSEY $400.00 instead of the $350.00 that he had told CHS the narcotics would cost.  CHS called RAMSEY and told him that he/she would be coming back to get the extra $50.00 CHS gave him.  RAMSEY replied, "Ok."  SA Day dropped CHS off to retrieve the money.  CHS approached RAMSEY and asked for the money back. RAMSEY gave CHS the $50.00.  CHS later gave SA Day the $50.00.

RAMSEY-014

# EXHIBIT C



```
                 F7AEE950-0657-445B-9930-9DD32F1A1972.txt
+--------- SUBSCRIBER PROFILE   083 ----------K---- AVAILABLE FUNCTIONS ----+
|Ctype  RETAIL                 ACTIVE      |F-Key  Action Requested         |
|                                          | F1 ..Direct Adjustments        |
|Acct#  ███████████1 Billcycle  1 (510)837-1800| F2 ..Work Orders           |
|AccNme                                    | F3 ..Special Agreement    NO   |
|LName  RAMSEY_____ LEDON              | F4 ..Manual Switch Intface     |
|Address                                   | F5 ..Billing Address      N    |
|                                          | F6 ..Sub Maintenance           |
|City/ST  RICHMOND         CA  ███████████ | F7 ..Cellular Phones      1    |
|HPhn              WkPhn                    | F8 ..Pay/Adj/POS          N    |
|WkPlace                                   | F9 ..Deposits             N    |
|Spouse                        Assoc    0  |F10 ..Billing History           |
|              DOB  ████████   Group    0  |F11 ..Memo  Y      Ticket  NO   |
|DrvLsc                  Incom             |F12 ..Pending Work Ords    N    |
|CredNo                  CExp 00/00 CType  |--------- Controls ---------    |
|Entry  8/01/07 BlThru  7/01/08 LstPay  5/02/08| Bonus Award Prog N         |
|Rate        49.99 Tax          7.81       | Pull Bill  Months              |
|LstPymnt    57.61- BalDu      57.80       | No Charge       N              |
|LastBill   115.41  WrtOff      0.00       | No Late Charge  N              |
|Comment                                   | Dunning         Y              |
|                                          | Paper Work      N E-Bill  N    |
+------------------------------------------J----------------------------------+

Esc-Exit/Subscriber Process Menu
+-------------------------- Cellular Phones ---------------------- cphning +
|                                          | Functions Available           |
| MDN #  (510)837-1800 MIN # 000005108371800| F1 - Forward    F2- Backward |
| Account     040 - 1352689 - 1            | F3 - Show Services            |
| Cust Type   RETAIL                       | F4 - Free Minutes      NO     |
| Name        LEDON RAMSEY                 | F5 - Trouble Ticket    NO     |
| User                   Lock Code         | F6 - Switch Manager           |
| ESN         03812369437   Hex 26BCBE1D   | F7 - Rate Plan Analysis       |
| Model       2270      NOKIA 2270         | F8 - Minute Adjustments       |
| Location    H   HANDHELD                 | F9 - Phone Maintenance        |
| Salesman    M60 JEFF VEGA                | F11- Airtime Summary          |
| CSR IO                                   |-------------------------------|
| Commission  999 NO COMMISSION            | Calls Thru    5/25/08 10:53   |
| Contract    0001 NO CONTRACT             | Lease Billed           0.00   |
| Activate        8/01/07    Ported Status | Lease Balance          0.00   |
| Lock Date    8/01/07 Term Date 9/01/07   |                               |
| Toll Carrier 0288 A T & T                |                               |
| Origination  INVENTORY                   | MTD Usage Charges  (No Tax)   |
| Lease                                    | Roamer Air Charges     0.00   |
| Campaign                                 | Toll Charges           0.00   |
| Standard Trnsmt #        Batch Date      | Other Charges          0.00   |
| Feature  Trnsmt #        Batch Date      | Total MTD Charges      0.00   |
+------------------------------------------+-------------------------------+
Esc- Exit to Subscriber Profile
```

Page 1

RAMSEY-023

# EXHIBIT D











# EXHIBIT E

RICHMOND POLICE DEPT. 0110

1 - 27th Street
Richmond, California 94804

☐ DOMESTIC VIOLENCE    ☐ HATE RELATED
☐ VIC VIOLENT CRIME 60 OR OLDER    ☑ IN CUSTODY

Page 1 of 7

| 1. CODE SECTION | 4. TITLE | 5. CLASSIFICATION | 6. FELONY |
|---|---|---|---|
| HS 11359 | POSS. MARIJUANA FOR SALES | | ☑ |
| | | | MISDEMEANOR |

| 7. DATE & TIME OCCURRED - DAY | 8. DATE & TIME REPORTED | 9. WHERE OCCURRED |
|---|---|---|
| 5/28/08 1530/SUN | 5/25/08 1512 | |

| 10. VICTIM NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS) | 11. RESIDENCE ADDRESS | 12. RES PHONE |
|---|---|---|
| STATE OF CALIFORNIA | | |

| 13. OCCUPATION | 14. D.O.B. | 15. SEX | 16. RACE | 17. AGE | 18. BUSINESS ADDRESS/SCHOOL | 19. BUS PHONE OR BP |
|---|---|---|---|---|---|---|
| | | | | | | |

| COMPLETE IF PERSONAL INJURY OR RAPE | 20. WHERE HOSPITALIZED | 21. DATE/TIME | 22. ATTENDING PHYSICIAN | 23. CHART NUMBER | 24. NATURE OF INJURY |
|---|---|---|---|---|---|
| | | | | | |

CODES: VIC = VICTIM    WIT = WITNESS    REP = REPORTING PARTY

| INVL. | 25. NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS) | 27. RESIDENCE ADDRESS | 28. RES PHONE |
|---|---|---|---|
| | | | |

| OCCUPATION | 30. D.O.B. | 31. SEX | 32. RACE | 33. AGE | 34. BUSINESS ADDRESS/SCHOOL | 35. BUS PHONE OR BPC |
|---|---|---|---|---|---|---|

| INVL. | 37. NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS) | 38. RESIDENCE ADDRESS | 39. RES PHONE |
|---|---|---|---|

| OCCUPATION | 41. D.O.B. | 42. SEX | 43. RACE | 44. AGE | 45. BUSINESS ADDRESS/SCHOOL | 46. BUS PHONE OR BPC |
|---|---|---|---|---|---|---|

| INVL. | 48. NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS) | 49. RESIDENCE ADDRESS | 50. RES PHONE |
|---|---|---|---|

| OCCUPATION | 52. D.O.B. | 53. SEX | 54. RACE | 55. AGE | 56. BUSINESS ADDRESS/SCHOOL | 57. BUS PHONE OR BPC | 58. ADDITIONAL VICTIM(S), WITNESS(ES)? |
|---|---|---|---|---|---|---|---|

| 59. SUSPECT #1 (LAST, FIRST, MIDDLE) | 60. NICKNAME/AKA | 61. DOB | 62. SEX | 63. RACE | 64. AGE | 65. HT | 66. WT | 67. HAIR | 68. EYES |
|---|---|---|---|---|---|---|---|---|---|
| RAMSEY, LEDON JOHNTAE | | | M | B | 27 | 6'0" | 230 | BLK | BRN |

| SUSPECT'S ADDRESS | 70. CLOTHING DESCRIPTION | 71. CITE # | 72. ARREST # | 73. MIRANDA |
|---|---|---|---|---|
| | BLK. SHIRT / BLUE JEAN SHORTS | | | ☐ YES ☐ NO |

| 74. SUSPECT #2 (LAST, FIRST, MIDDLE) | 75. NICKNAME/AKA | 76. DOB | 77. SEX | 78. RACE | 79. AGE | 80. HT | 81. WT | 82. HAIR | 83. EYES |
|---|---|---|---|---|---|---|---|---|---|
| N/A | | | | | | | | | |

| SUSPECT'S ADDRESS | 85. CLOTHING DESCRIPTION | 86. CITE # | 87. ARREST # | 88. MIRANDA |
|---|---|---|---|---|
| | | | | ☐ YES ☐ NO |

| 89. SUSPECT BUILD | 90. COMPLEXION | 91. HAIR STYLE | 92. HAIR LEN/TYPE | 93. FACIAL HAIR | 94. GENERAL APPEARANCE | 95. SPEECH | 96. DEMEANOR |
|---|---|---|---|---|---|---|---|
| 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT |
| ☐ Unknown | UNK ☐ ☐ Unknown | UNION ☐ ☐ Unknown | UNK ☐ ☐ Unknown | UNION ☑ ☐ Unknown | NK ☐ ☐ Unknown | UNK ☐ ☐ Unknown | UNK ☐ ☐ Unknown |
| ☐ Thin | AC ☐ ☐ Acne | AFRO ☐ ☐ Afro/Nat | BALD ☐ ☐ Bald | CLSH ☐ ☐ Clean Shave | CS ☐ ☐ Conservative | ACC ☐ ☐ Accent | ANG ☐ ☐ Angry |
| ☑ Muscular | DRK ☑ ☐ Dark | BRAD ☐ ☐ Braided | COLLA ☐ ☐ Collar | FULB ☐ ☐ Full Beard | DR ☐ ☐ Dirty | LSP ☐ ☐ Lisps | APD ☐ ☐ Apologetic |
| ☐ Average | FR ☐ ☐ Freckled | BUSH ☐ ☐ Bushy | LONG ☐ ☐ Long | FUMA ☐ ☐ Fu Manchu | DS ☐ ☐ Disguise | LOU ☐ ☐ Loud | CAL ☐ ☐ Calm |
| ☐ Heavy | LT ☐ ☐ Light | GRSY ☐ ☐ Greasy | SHOU ☐ ☐ Shoulder | GOAT ☐ ☐ Goatee | FL ☐ ☐ Flashy | LOP ☐ ☐ Low Pitched | DSO ☐ ☐ Disorganized |
| | ME ☐ ☐ Medium | MILT ☐ ☐ Military | SHOR ☑ ☐ Short | LOWL ☐ ☐ Lower Lip | GL ☐ ☐ Good Looking | HIP ☐ ☐ High Pitched | IRR ☐ ☐ Irrational |
| | PA ☐ ☐ Pale | PONY ☐ ☐ Ponytail | COAR ☐ ☐ Coarse | MUST ☐ ☐ Mustache | MO ☐ ☐ Military | OFF ☐ ☐ Offensive | NER ☐☑ Nervous |
| | PM ☐ ☐ Pocked | FINE ☐ ☐ Fine | FINE ☐ ☐ Fine | N/FUZ ☐ ☐ Nose/Fuzz | UK ☐ ☐ Unkept | NES ☐ ☐ Non English Speaking | POL ☐ ☐ Polite |
| | RU ☐ ☐ Ruddy | STRA ☐ ☐ Straight | THIC ☐ ☐ Thick | SIDE ☐ ☐ Sideburns | UN ☐ ☐ Unusual Odor | | PRO ☐ ☐ Professional |
| | SA ☐ ☐ Sallow | WVCL ☐ ☐ Wavy/Curly | THIN ☐ ☐ Thinning | UNSH ☐ ☐ Unshaven | WG ☐ ☐ Well Groomed | NOM ☐ ☐ Normal | STU ☐ ☐ Stupor |
| | TA ☐ ☐ Tanned | WIG ☐ ☐ Wig | WIRY ☐ ☐ Wiry | VNDK ☐ ☐ Van Dyke | CA ☑☐ Casual | TLK ☐ ☐ Talkative | VIO ☐ ☐ Violet |
| | OT ☐ ☐ Other | CDRN ☐ ☐ Corn Rows | SHAV ☐ ☐ Shaved | OTHR ☐ ☐ Other | CC ☐ ☐ Clean Cut | RAP ☑☐ Rapid | NOR ☐ ☐ Normal |
| | | CREW ☐ ☐ Crew Cut | RCHL ☐ ☐ Receding | | OT ☐ ☐ Other | DIS ☐ ☐ Disguised | PFN ☐ ☐ Profane |
| | | OTHER ☐ ☐ Other | MED ☐ ☐ Medium | | | SOF ☐ ☐ Soft | EFF ☐ ☐ Effeminate |
| | | PUNK ☐ ☐ Punk | | | | STUD ☐ ☐ Stutter | |

FURTHER SUSPECT DESCRIPTION (I.E. GLASSES, TATTOOS, TEETH, BIRTHMARKS, JEWELRY, SCARS, MANNERISMS, WEAPONS, CLOTHES, SHOES, MASKS, HATS, GLOVES, DEFORMITIES, ETC.)

SPECT 1:

SPECT 2:

| 98. ADDITIONAL SUSPECTS LISTED? |
|---|
| ☐ YES ☑ NO |

VL. CODES: VIC = VICTIM    SUS = SUSPECT    OTH = OTHER

| INVL | 100. LICENSE NUMBER | 101. LIS | 102. LIY | 103. V. YR | 104. V. MA | 105. V. MO | 106. V. ST | 107. V. CO |
|---|---|---|---|---|---|---|---|---|
| | | CA | 2008 | 1989 | GMC | UNK | VAN | SILVER |

| 108. TOWED TO | 109. HOLD | 110. ADDITIONAL VEHICLE IDENTIFIERS (DAMAGE, CHROME WHEELS, VIN, ETC.) |
|---|---|---|
| N/A | ☐ YES ☑ NO | N/A |

| 111. INVL. | 112. LICENSE NUMBER | 113. LIS | 114. LIY | 115. V. YR | 116. V. MA | 117. V. MO | 118. V. ST | 119. V. CO |
|---|---|---|---|---|---|---|---|---|
| N/A | | | | | | | | |

| 120. TOWED TO | 121. HOLD | 122. ADDITIONAL VEHICLE IDENTIFIERS (DAMAGE, CHROME WHEELS, VIN, ETC.) |
|---|---|---|
| | ☐ YES ☐ NO | |

| OTHER ☐ YES | HOMICIDE | ROBBERY | INTEL UNIT | C.C.D.V. | ANALYSIS | |
|---|---|---|---|---|---|---|
| TION ☐ NO | PROPERTY | AUTO THEFT | FAMILY EXPL. | VICE | RECORDS | CROSS REF CASE # |
| | FRAUD | ADMIN | TRAFFIC | STATE | TOTAL | |
| | P.S.U. | COM SERVICE | D.A. | PATROL | REVIEWED BY | |
| | SCHOOL | MARINE UNIT | TRAFFIC ENG. | ASSIGNED | Vice | |

ASSIGNED: Vice

LT. A. THREETS    5/26/08

Rived July 10, 2004

# RICHMOND POLICE DEPT. 0710

| RPD CASE NO. | AM |
|---|---|
| [redacted] | PAGE 2 of 7 |

## 133 INVESTIGATIVE ACTIVITIES

- [ ] 1 Limited Vehicle Canvass
- [ ] 2 Foot Route Photographed
- [ ] 3 Vehicle/Area Times Photographed
- [ ] 4 Scene Photographed
- [ ] 5 Victim Photographed
- [ ] 6 B&C Photographed
- [ ] 7 Neighbor Checked
- [ ] 8 Area Checked
- [x] 9 Aid Checked
- [ ] 10 Warrant(s) Reviewed
- [ ] 11 Vehicle(s) Confirmed
- [ ] 12 Task Who?
- [ ] 13 Aid Notified Who?
- [ ] 14 Crime Prevention Survey Completed
- [ ] 15 Teletype or BOL
- [ ] 16 Done

## 132 PHYSICAL EVIDENCE

- [ ] FP Finger Prints
- [ ] DNA Other Prints
- [ ] WP Weapon
- [ ] TL Tool/Marks
- [ ] VH Vehicle
- [ ] PH Photos
- [ ] LT Hair
- [ ] XT Semen
- [ ] BL Blood/Urine
- [ ] ER Projectiles/Ammunition/etc.
- [ ] CL Clothing
- [ ] TT Tire Tracks
- [ ] SH Installation/Tool
- [ ] PS Paint Samples
- [ ] GL Glass/Fragments
- [ ] DC Documents
- [ ] MS Misc/Other

## 129 SOLVABILITY

- [x] SUSPECT CAN BE NAMED
- [x] SUSPECT CAN BE LOCATED
- [x] SUSPECT CAN BE DESCRIBED
- [ ] SUSPECT CAN BE IDENTIFIED
- [ ] THERE IS A WITNESS TO CRIME
- [ ] THERE IS SIGNIFICANT M.O. PRESENT
- [ ] MAJOR PROPERTY LOSS ($5,000 OR OVER)
- [ ] STOLEN PROPERTY IS TRACEABLE
- [ ] STOLEN PROPERTY CAN BE IDENTIFIED
- [ ] SERIAL NUMBERS ARE KNOWN
- [ ] THERE IS SIGNIFICANT PHYSICAL EVIDENCE
- [ ] SUSPECT VEHICLE LICENSE IS KNOWN
- [ ] SUSPECT VEHICLE CAN BE DESCRIBED
- [ ] SUSPECT VEHICLE CAN BE IDENTIFIED

## 130 VICTIM VULNERABILITY

### 1 2 VICTIM

- ELDER [ ] [ ] Elderly
- MNTL [ ] [ ] Mental Disability
- PHYDE [ ] [ ] Physical Disability
- YOUNG [ ] [ ] Young/Small
- FORGN [ ] [ ] Foreign

Weapon Used Against Victim [ ] Yes [ ] No

## 131 VICTIM ACTIONS

### 1 2 VICTIM

- FRONT [ ] [ ] Involved with Prostitute
- ALONE [ ] [ ] Alone
- AWAY [ ] [ ] Away From Scene of Crime
- HITCH [ ] [ ] Hitch Hiking
- WALK [ ] [ ] Walking

MORE...

### CONTINUED...  1 2 VICTIM

- INRES [ ] [ ] In Restaurant
- JOG [ ] [ ] Jogging
- PKLOT [ ] [ ] In Parking Lot
- SLEEP [ ] [ ] Sleeping
- DRIVE [ ] [ ] Driving
- SHOP [ ] [ ] Shopping

### CONTINUED  1 2 VICTIM

- BIKE [ ] [ ] Biking
- UBAD [ ] [ ] Under the Influence
- OTHER [ ] [ ] Other
- VMPT [ ] [ ] Waiting for Public Transit
- PAMPT [ ] [ ] Passenger, Public Transit
- PASPV [ ] [ ] Passenger, Private Vehicle

## 133 NARRATIVE

SEE TYPED NARRATIVE

CROSS RPD CASE # [redacted]

| 121 REPORTING OFFICER | 124 ID | 123 APPROVED BY | 122 DATE |
|---|---|---|---|
| E. SUTU | [redacted] | | |



RICHMOND POLICE DEPARTMENT 0710
Patrol Bureau Supplement

| CASE NO: |
| --- |
| ███████ |

PAGE NO:
3 Of 7

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
| --- | --- | --- |
| HS 11359 | Possession of marijuana for sales | ███████ |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
| --- | --- |
| State of California | 05/25/08 |

CROSS REFERENCE RPD CASE # ███████

RECORDS INDEX OTHERS AS:

████████    DOB: ████

████████    DOB: ████

████████    DOB: ████

████████    DOB: ████

████████    DOB: ████

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
| --- | --- | --- | --- |
| E. Soto ████ | ES | 05/25/08 | |

| RICHMOND POLICE DEPARTMENT 0710 | CASE NO: ▓▓▓ |
|---|---|
| Patrol Bureau Supplement | PAGE NO: 4 of 7 |

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
|---|---|---|
| HS 11359 | Possession of marijuana for sales | ▓▓▓▓▓▓▓ |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
|---|---|
| State of California | 05/25/08 |

On 05/23/08, at approx. 1517 hours, I was dispatched to the area of the Monterey Pines Apartments regarding a man with a gun. Richmond Police Dispatch advised the caller stated that a man that she knew, a ▓▓▓▓▓▓▓▓▓, heavyset, wearing a white t-shirt and dark colored shorts, just fired the firearm and fled on foot in an unknown direction.

I arrived in the area with several cover officers. I drove into the "B" lot of the complex and observed a large group of BMA's, listed above, standing in the parking lot directly in front of 640 S. 37th St. #7.

I noticed a BMA, who I recognized to be (S) ▓▓▓▓▓▓▓▓▓ walking briskly away from the group. ▓▓▓ and his family had been evicted from an apartment on the property and per the property manager, ▓▓▓ he was not supposed to be on the property.

I told ▓▓▓ to stop. ▓▓▓ looked at me then dropped a small baggie onto the ground. I detained ▓▓▓ in handcuffs. I looked around the area where ▓▓▓ had dropped the small baggie and observed a 1" by 1" clear zip lock baggie containing a green leafy substance.

I arrested ▓▓▓ per 602" (m) PC and HS 11357(b).

Officer Moody contacted the other individuals. Of the listed individuals contacted was Ledon Ramsey. I advised Ramsey of the reason for us being in the area (the man with the gun). Ramsey told me he understood. I asked Ramsey if he lived on the property. Ramsey told me he lived at ▓▓▓▓▓▓, which is was just across the parking lot where we were standing.

I asked Ramsey of there were any people in his residence that might be hiding, such as the gunman. Ramsey told me there should be no one in his house, that the door was unlocked and that I could check to make sure no persons were hiding in the residence.

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
|---|---|---|---|
| E. Soto # ▓▓▓ | ES | 05/25/08 | |

RAMSEY-032

# RICHMOND POLICE DEPARTMENT 0710
## Patrol Bureau Supplement

| CASE NO: |
|---|
| ████████ |

| PAGE NO: |
|---|
| 5 of 7 |

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
|---|---|---|
| HS 11359 | Possession of marijuana for sales | ████████ |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
|---|---|
| State of California | 05/25/08 |

I conducted a protective sweep of Ramsey's residence for any individuals that may have been hiding. During the protective sweep and in plain view I noticed approx. (5) 1" by 1" clear zip lock baggies containing a green leafy substance resting on the kitchen table. Next to the baggies were a small amount of $1.00 bills, which I later counted to be $10.00 US, and a black digital scale. Based on my training and experience, I recognized these items to be material used for the packaging and sales of illegal narcotics. It has been my experience that sellers typically package marijuana in smaller amounts, such as those on the table, for street level sales, not for personal use.

I brought Ramsey into the residence and sat him on his couch. Ramsey immediately began telling me that he had, "Nothing to hide." It appeared Ramsey noticed the marijuana on the table. Ramsey then told me that he smokes marijuana. Ramsey went on to say he had a shotgun his father gave him in the rear bedroom. Ramsey stated, "I just wanted to let you know." Ramsey said we (police) could take the shotgun. Ramsey expressed to me that he did not want any trouble and wanted to cooperate fully with the police.

I asked Ramsey if we (police) could search his residence for any contraband. Ramsey said we could search his residence. Ramsey read and signed a "Consent to Search" form. SEE ATTACHED COPY.

Officers Grivetti responded and assisted in the search of the residence. Officer Grivetti recovered the shotgun, a bullet proof vest, several rounds of ammunition, the suspected marijuana, digital scale and packaging material. SEE OFFICER GRIVETTI'S REPORT FOR FURTHER.

I advised Ramsey of the contraband located in his residence. Ramsey told me to take all the items.

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
|---|---|---|---|
| E. Soto #████ | ES | 05/25/08 | |

| | | | CASE NO: ▮ |
|---|---|---|---|
| **RICHMOND POLICE DEPARTMENT 0710** | | | **PAGE NO:** |
| Patrol Bureau Supplement | | | 6 Of 7 |

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION | |
|---|---|---|---|
| HS 11359 | Possession of marijuana for sales | ▮ | |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
|---|---|
| State of California | 05/25/08 |

I asked Ramsey if he owned any vehicles. Ramsey told me he owned a silver colored van parked just outside his residence. I located a silver van, CA Lic.# ▮ outside his residence and attempted to conduct a registration check of the vehicle to confirm that Ramsey was the owner. The CLETS system, the system able to query vehicle registration, was not working. The vehicle was unlocked. I conducted a search, along with Officer Moody and his K-9 Rico, of the vehicle. I located a black carry bag which contained a digital scale, and a box of sandwich bags. I could smell the scent of fresh marijuana coming from the interior of the bag. Based on my training and experience, I recognized these items to be consistent with those used by narcotics sellers for packaging illegal narcotics. Officer Moody located a 2" by 4" bag of green leafy substance near the center console of the vehicle. I recognized this substance, based on my training and experience, to be the illegal narcotic marijuana. I took custody of the bag and the suspected marijuana and later booked its contents into RPD evidence.

Ramsey was released on scene.

Fellow officers conducted an additional search of the area for the outstanding gunman, with negative results.

▮ was transported to the Hall of Justice for booking. As ▮ is currently on felony probation for a firearms offense, I telephones County Juvenile Hall to see if he would be accepted. Juvenile Hall declined to take custody of ▮ I had ▮ mother, ▮ ▮ respond and take custody of ▮

▮ was arrested on an outstanding warrant out of Oakland, CA. and transported to the Hall of Justice for Booking.

SEE OFFICER PALMA'S SUPPLEMENTAL REPORT FOR PR'S STATEMENT.

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
|---|---|---|---|
| E. Soto ▮ | ES | 05/25/08 | |

# RICHMOND POLICE DEPARTMENT 0710
## Patrol Bureau Supplement

CASE NO:
███████

PAGE NO:
7 Of 7

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
|---|---|---|
| HS 11359 | Possession of marijuana for sales | ███████ |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
|---|---|
| State of California | 05/25/08 |

Route to Det. Pomeroy.

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
|---|---|---|---|
| E. Soto ███████ | ES | 05/25/08 | |

RAMSEY-035

## CONSENT TO SEARCH

Date: 5/25/08

Location: ▓▓▓▓▓▓▓▓▓▓

I, _LEDON RAMSEY_ , having been informed of my constitutional right to
(Print Name)

prohibit a search of these premises without a search warrant, and also having been informed

of my rights which allow me to refuse to provide consent for a search, hereby authorize

Officers _SOTO , MOODY , WANG_

of the _RICHMOND POLICE DEPARTMENT_ to conduct

a complete search of the premises, including all rooms, structures, vehicles and containers,

which are located at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

California.

I authorize the above listed Officers to take from the premises any letters, papers, materials,

property or other items which are either illegal to posses and/or are required and/or helpful

for their investigation.

I have provided my permission to search to these Officers freely and voluntarily. No threats,

coercion, rewards or other considerations have been made by theses officers to me to

obtain consent to search.

▓▓▓▓▓▓▓▓▓▓
(Signature)

5-25-07

Witnesses:

_E. SOTO_ ▓▓▓

_C. WHITNEY_ ▓▓▓

Form #15a REV. 01/10/08

RAMSEY-036

# RICHMOND POLICE DEPARTMENT 0710
## Patrol Bureau Supplement

| CASE NO: |
|---|
| |

| PAGE NO: |
|---|
| 1 OF 2 |

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
|---|---|---|
| 11359 H&S | Possession Marijuana for sales | |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
|---|---|
| State of CA | 5/25/08 |

On 5/25/08 at aprox 1600 hours, I was requested to photograph and collect evidence located inside a residence at ▓▓▓▓▓ I met with Ofc Soto at this time. He advised he had located weapons, ammunition and marijuana (including indicia for sales) inside the residence. He requested I photograph and collect these items.

I.  **OBSERVATIONS:** ▓▓▓▓ St is a two story apartment building located inside the Monterey Pines apartment complex. Unit ▓ is located on the south side of the building on the ground level. The apartment is identified as a two bedroom one bath apartment home. The apartment residence Ramsey, Ledon was on scene. I was requested to photograph the following items:

- Front room: A kitchen table is located against the north wall. Atop the table were four individually bagged zip style bags which contained a green leafy plant material consistent with marijuana. Also located on the table was a pocket size digital scale, package of small coin size baggies, and loose money. Lying atop a plastic chair next to the table was a ballistic vest.
- South bedroom (daughters bedroom) - the room contained misc children's items. The closet was found to contain a 16 gauge bolt action shotgun on the upper shelf. Misc caliber ammunition (16 gauge, .38 spl, .25, .22 and .223 caliber ammunition) was also located on the top shelf of the closet. Per the homeowner, the gun belonged to his deceased grandfather. I also located a non-functioning radio scanner on the closet shelf and a machete.
- West bedroom (Ramsey bedroom) - The closet was found to contain several coin size bags lying atop the walk in closet shelf. A blue backpack in the closet was found to contain a box of ammunition (.38 spl).
- Rear view GMC conversion van CA ▓▓▓▓ parked in front of apartment residence

All items were photographed and collected (excluding machete). I examined the shotgun and it was identified as follows: Jc Higgins model 583 bold action .16 gauge shotgun. The shotgun did not have a serial number. The overall length was 46 inches. The firearm was unloaded and had severe rust. The individually packaged bags of green leafy substance were found to have an aprox weight of .7g each (total gross weight aprox 3.5g). A NIK color presumptive test showed the leafy plant material was consistent with marijuana. All items were booked into RPD evidence.

II.  **PHOTOGRAPHS: Taken using Olympus digital camera #34**
1. Exterior view apartment building
2. Front view unit #5

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
|---|---|---|---|
| Grivetti # | Jg | 5/25/08 | LT. A. THREETS |

| Robbery | Com. Rel. | A.T. | Homicide | Property | Stat | Admin. | Juv. | Vice | Other: | Assigned: |
|---|---|---|---|---|---|---|---|---|---|---|
| State | BS Capt. | Fraud | C.A. | D.A. | Patrol Capt. | CIB Capt. | Traffic | I.A. | Other: | Total |



# RICHMOND POLICE DEPARTMENT 0710
## Patrol Bureau Supplement

CASE NO:

PAGE NO:
2 OF 2

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
|---|---|---|
| 11359 H&S | Possession Marijuana for sales | |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
|---|---|
| State of CA | 5/25/08 |

    3. General view table
    4. Vest on chair
    5. Money and packaged bags
    6. Scale
    7. Shotgun in closet
    8. Shotgun
    9. Walk in closet
    10. Baggies on closet shelf
    11. Ammunition
    12. Scanner and machete
    13. Ammunition in bag
    14. Ramsey, Ledon
    15. Rear view GMC ▓
    16. DATA

**III.**   **LATENTS: None**

**IV.**   **PHYSICAL EVIDENCE:**
    1. 1343-1- .16 gauge bolt action shotgun (no serial number)
    2. 1342-2- Ballistic vest
    3. 1343-3- pocket size digital scale
    4. 1343-4- coin size zip style baggies
    5. 1343-5- misc caliber ammunition (loose) .38 spl, .25, .22 and .223
    6. 1343-6- (5) individually packaged zip style baggies with green plant material

**V.**   **FINAL DISPOSITION:**
    1. Book photo evidence into RPD photo locker #1
    2. Book 1343-1 into RPD evidence locker #6
    3. Book 1343-2, 3, 4, 5 into RPD evidence locker #19
    4. Book 1343-6 into RPD narcotics locker
    5. Attach to original report

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
|---|---|---|---|
| Grivetti ▓ | Jg | 5/25/08 | LT. A. THREETS ▓ |

| Robbery | Com. Rel. | A.T. | Homicide | Property | Stat | Admin. | Juv. | Vice | Other: | Assigned: |
|---|---|---|---|---|---|---|---|---|---|---|
| State | SS Capt. | Fraud | C.A. | | Patrol Capt. | CIB Capt. | Traffic | I.A. | Other: | Total |

RAMSEY-038

# EXHIBIT F



RAMSEY- 041



RAMSEY - 042



RAMSEY - 043



RAMSEY ~ 044

# EXHIBIT G

RAMSEY-045



Ramsey - 046



RAMSEY- 048

RAMSEY- 049



# EXHIBIT H

Ramsey- 051

# EXHIBIT I

401 - 27th Street
Richmond, California 94804

☐ DOMESTIC VIOLENCE    ☐ HATE RELATED
☐ VIC VIOLENT CRIME 60 OR OLDER    ☐ IN CUSTODY

**3. CODE SECTION** 246 PC

**4. TITLE** SHOOTING AT AN INHABITED DWELLING

**5. CLASSIFICATION**

**6.** FELONY ☒    MISDEMEANOR ☐

**7. DATE & TIME OCCURRED - DAY** 2/21/0 : 2050H WED

**8. DATE & TIME REPORTED** 2/22/07 1149 HRS

**9. WHERE OCCURRED**

### VICTIM
10. VICTIM NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS)
11. RESIDENCE ADDRESS
12. RES PHONE

13. OCCUPATION  |  15. SEX  16. RACE  17. AGE  18. BUSINESS ADDRESS/SCHOOL  19. BUS PHONE OR BPC

20. WHERE HOSPITALIZED  21. DATE/TIME  22. ATTENDING PHYSICIAN  23. CHART NUMBER  24. NATURE OF INJURY

**INVL CODES    VIC = VICTIM    WIT = WITNESS    REP = REPORTING PARTY**

25. INVL WIT  | 26. NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS)  | 27. RESIDENCE ADDRESS  | 28. RES PHONE

29. OCCUPATION  30. D.O.B.  31. SEX  32. RACE  33. AGE  34. BUSINESS ADDRESS/SCHOOL  35. BUS PHONE OR BPC

INVL WIT  | NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS)  | RES PHONE

40. OCCUPATION  41. DA  42. SEX  43. RACE  44. AGE  45. BUSINESS ADDRESS/SCHOOL  46. BUS PHONE OR BPC

47. INVL OTH  48. NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS)  | RES PHONE

51. OCCUPATION  |  55. SEX  56. RACE  57. AGE  |  BUS PHONE OR BPC

58. ADDITIONAL VICTIM(S), WITNESS(ES)? ☐

### SUSPECT
59. SUSPECT #1 (LAST, FIRST, MIDDLE) RAMSEY, LEDON JOHNTAE  | 60. NICKNAME/AKA UNKNOWN  | 62. SEX M  | 63. RACE B  | 64. AGE 25  | 65. HT 6'2"  | 66. WT 220  | 67. HAIR B  | 68. EYES BRN

69. SUSPECT'S ADDRESS  | 70. CLOTHING DESCRIPTION UNKNOWN  | 71. CITE #  | 72. ARREST #  | 73. MIRANDA ☐ YES ☒ NO

74. SUSPECT #2  | 75. NICKNAME/AKA UNKNOWN  | 76. DOB  | 77. SEX M  | 78. RACE  | 79. AGE  | 80. HT  | 81. WT  | 82. HAIR  | 83. EYES

84. SUSPECT'S ADDRESS  | 85. CLOTHING DESCRIPTION  | 86. CITE #  | 87. ARREST #  | 88. MIRANDA ☐ YES ☐ NO

RECORDS

| 89. SUSPECT BUILD | COMPLEXION | 91. HAIR STYLE | 92. HAIR LGTH/TYPE | 93. FACIAL HAIR | GENERAL APPEARANCE | 94. SPEECH | 95. DEMEANOR |
|---|---|---|---|---|---|---|---|
| 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT |
| U ☐ ☐ Unknown | UK ☐ ☐ Unknown | UNKN ☐ ☐ Unknown | UNK ☐ ☐ Unknown | UNKN ☐ ☐ Unknown | NK ☐ ☐ Unknown | UNK ☐ ☐ Unknown | UNK ☐ ☐ Unknown |
| T ☐ ☐ Thin | AC ☐ ☐ Acne | AFRO ☐ ☐ Afro/Nat | BALD ☐ ☐ Bald | CLSH ☐ ☐ Clean Shave | CS ☐ ☐ Conservative | ACC ☐ ☐ Accent | ANG ☐ ☐ Angry |
| M ☐ ☐ Muscular | DR ☐ ☐ Dark | BRAD ☐ ☐ Braided | COLLA ☐ ☐ Collar | FULB ☐ ☐ Full Beard | DR ☐ ☐ Dirty | L3P ☐ ☐ Lisps | APO ☐ ☐ Apologetic |
| A ☐ ☐ Average | FR ☐ ☐ Freckled | BUSH ☐ ☐ Bushy | LONG ☐ ☐ Long | FUMA ☐ ☐ Fu Manchu | DS ☐ ☐ Disguise | LOU ☐ ☐ Loud | CAL ☐ ☐ Calm |
| H ☐ ☐ Heavy | LT ☐ ☐ Light | GRSY ☐ ☐ Greasy | SHOU ☐ ☐ Shoulder | GOAT ☐ ☐ Goatee | FL ☐ ☐ Flashy | LOP ☐ ☐ Low Pitched | DSO ☐ ☐ Disorganized |
| | ME ☐ ☐ Medium | MILT ☐ ☐ Military | SHOR ☐ ☐ Short | LOWL ☐ ☐ Lower Lip | GL ☐ ☐ Good Looking | HIP ☐ ☐ High Pitched | IRR ☐ ☐ Irrational |
| | PA ☐ ☐ Pale | PONY ☐ ☐ Ponytail | COAK ☐ ☐ Coarse | MUST ☐ ☐ Mustache | ML ☐ ☐ Military | OFF ☐ ☐ Offensive | NER ☐ ☐ Nervous |
| | PM ☐ ☐ Pocked | PROC ☐ ☐ Processed | FINE ☐ ☐ Fine | NFUZ ☐ ☐ None/Fuzz | UK ☐ ☐ Unkept | NES ☐ ☐ Non English Speaking | POL ☐ ☐ Polite |
| | RU ☐ ☐ Ruddy | STRA ☐ ☐ Straight | THIC ☐ ☐ Thick | SIDE ☐ ☐ Sideburns | UN ☐ ☐ Unusual Odor | | PRO ☐ ☐ Professional |
| | SA ☐ ☐ Sallow | WVCL ☐ ☐ Wavy/Curly | THIN ☐ ☐ Thinning | UNSH ☐ ☐ Unshaven | WG ☐ ☐ Well Groomed | NOM ☐ ☐ Normal | STU ☐ ☐ Stupor |
| | TA ☐ ☐ Tanned | WIG ☐ ☐ Wig | WIRY ☐ ☐ Wiry | VNDK ☐ ☐ Van Dyke | CA ☐ ☐ Casual | TLK ☐ ☐ Talkative | VIO ☐ ☐ Violet |
| | OT ☐ ☐ Other | CORN ☐ ☐ Corn Rows | SHAV ☐ ☐ Shaved | OTHR ☐ ☐ Other | CC ☐ ☐ Clean Cut | RAP ☐ ☐ Rapid | NOR ☐ ☐ Normal |
| | | CREW ☐ ☐ Crew Cut | RCHL ☐ ☐ Receding | | OT ☐ ☐ Other | DIS ☐ ☐ Disguised | PFN ☐ ☐ Profane |
| | | OTHER ☐ ☐ Other | MED ☐ ☐ Medium | | | SOF ☐ ☐ Soft | EFF ☐ ☐ Effeminate |
| | | PUNK ☐ ☐ Punk | | | | STUD ☐ ☐ Stutter | |

97. FURTHER SUSPECT DESCRIPTION (I.E. GLASSES, TATTOOS, TEETH, BIRTHMARKS, JEWELRY, SCARS, MANNERISMS, WEAPONS, CLOTHES, MASKS, HATS, GLOVES, DEFORMITIES, ETC.)
SUSPECT 1:

SUSPECT 2:

DATA ENTRY

MAR 0 9 2007

98. ADDITIONAL SUSPECTS LISTED? ☐ YES    ☐ NO

**INVL CODES    VIC = VICTIM    SUS = SUSPECT    OTH = OTHER**

### VEHICLES
99. INVL  100. LICENSE NUMBER  101. LIS  102. LIY  103. V. YR  104. V. MA  105. V. MO  106. V. ST  107. V. CO

108. TOWED TO  109. HOLD ☐ YES ☐ NO  110. ADDITIONAL VEHICLE IDENTIFIERS (DAMAGE, CHROME WHEELS, VIN, ETC.)

111. INVL  112. LICENSE NUMBER  113. LIS  114. LIY  115. V. YR  116. V. MA  117. V. MO  118. V. ST  119. V. CO

120. TOWED TO  121. HOLD ☐ YES ☐ NO  122. ADDITIONAL VEHICLE IDENTIFIERS (DAMAGE, CHROME WHEELS, VIN, ETC.)

FURTHER ☐ YES  ACTION ☐ NO

| ROUTING | | |
|---|---|---|
| HOMICIDE | ROBBERY | INTEL UNIT | C.C.D.V. | ANALYSIS |
| PROPERTY | AUTO THEFT | FAMILY SER. | VICE | RECORDS |
| FRAUD | ADMIN | TRAFFIC | STATE | TOTAL 2 | REVIEWED BY |
| P.A.U. | COM SERVICE | D.A. | PATROL | ASSIGNED | DATE 3/1/07 |
| SCHOOL | MARINE UNIT | TRAFFIC ENG. | | | |

Revised July 18, 2004

OVER

RAMSEY-024

# RICHMOND POLICE DEPT. 0710

PAGE 2 OF 4

**121 INVESTIGATIVE ACTIVITIES N/A**

**122 PHYSICAL EVIDENCE**

**123 SOLVABILITY**

SUSPECT CAN BE NAMED
SUSPECT CAN BE LOCATED
SUSPECT CAN BE DESCRIBED

SUSPECT CAN BE IDENTIFIED
THERE IS A WITNESS TO CRIME
THERE IS SIGNIFICANT M.O. PRESENT
MAJOR PROPERTY LOSS (\$1000 OR OVER)

STOLEN PROPERTY IS TRACEABLE
STOLEN PROPERTY CAN BE IDENTIFIED
SERIAL NUMBERS ARE KNOWN
THERE IS SIGNIFICANT PHYSICAL EVIDENCE

SUSPECT VEHICLE LICENSE IS KNOWN
SUSPECT VEHICLE CAN BE DESCRIBED
SUSPECT VEHICLE CAN BE IDENTIFIED

**130 VICTIM VULNERABILITY**

**131 VICTIM ACTIONS**

Weapon Used Against Victim  ☑ Yes  ☐ No

**132 NARRATIVE**

REFER TO TYPED NARRATIVE

**133 REPORTING OFFICER**
R. BRANCH

**134 I.D. #** 1454

**135 APPROVED BY:**

**136 DATE**

RAMSEY-025

| CASE N |
| --- |

# RICHMOND POLICE DEPARTMENT 0710
## Patrol Bureau Supplement

PAGE NO:
3 Of 4

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
| --- | --- | --- |
| 246PC | Shooting at an inhabited dwelling | ▇▇▇▇▇▇ |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
| --- | --- |
| ▇▇▇▇▇▇▇▇ | 2/21/2007 |

**ATTENTION RECORDS: INDEX AS OTHER**

On 2/21/07 at approximately 2130 hours, there were multiple 911 calls advising that gun shots were heard in the 600 block of S.37th Street. No victims or witnesses were located at that time.

On 2/22/07 at approximately 1149 hours, I responded to ▇▇▇S.37th Street in regards to the shots fired call that occurred the night before. Victim▇▇▇▇▇▇called and advised that her apartment was hit by gunfire.

I contacted▇▇▇▇▇ and she stated that on 2/21/07 at approximately 1055 hours.▇▇▇▇▇▇ Witnesses▇▇▇▇▇▇▇▇▇▇called her and said that some people were shooting at their residence.

▇▇▇▇▇was at work and immediately rushed home▇▇▇▇▇▇She told me that as she approached her front door she noticed bullet holes on the North side of her residence.

She told me when she woke up the next morning she discovered her residence was hit by gun fire in several locations.

The North side of her building was hit 2 times, the South side was hit 4 times, and the East side was hit 2 times.

I spoke with ▇▇▇▇▇▇▇▇▇▇▇
They told me when they heard the gun fire they hit the ground and stayed there until the gun fire stopped.▇▇▇▇▇▇▇▇▇▇They remember hearing approximately 5-10 shots.

I contacted the apartment Manager▇▇▇who showed me bullet casings that he located. There were (4) 9mm Luger casings found near the side walk in between apartment complex 600 and 620, just south of

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
| --- | --- | --- | --- |
| R. Branch | ▇▇▇ | 2/22/07 | |

| Robbery ___ | Com. Rel. ___ | A.T. ___ | Homicide ___ | Property ___ | Stat ___ | Admin. ___ | Juv. ___ | Vice ___ Other _____ | Assigned: _____ |
| State ___ | SS Capt. ___ | Fraud ___ | C.A. ___ | D.A. ___ | Patrol Capt. ___ | CIB Capt. ___ | Traffic ___ | I.A. ___ Other _____ | Total _____ |

RAMSEY-026

# RICHMOND POLICE DEPARTMENT 0710
## Patrol Bureau Supplement

| CASE N |
|---|
| ▇▇▇▇▇ |

| PAGE NO: |
|---|
| 4  Of  4 |

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
|---|---|---|
| 246PC | Shooting at an inhabited dwelling | ▇▇▇▇▇▇▇ |

| VICTIM'S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
|---|---|
| ▇▇▇▇▇▇ | 2/21/2007 |

complex 600 apt. 7&9.

It appeared there was a gun fight between two individuals. There were shots fired from the North and South of the building, suggesting cross-fire.

I contacted ▇▇▇▇ who resides at ▇▇▇▇▇▇ stated ▇▇ was at work when the shooting occurred and was unaware that the shooting ever took place. ▇▇ building was hit by a single stray bullet on the North side of ▇▇ residence.

Another bullet struck complex 630 ▇▇▇▇ I was unable to make contact with anyone at this residence.

The apartment Manager ▇▇▇ later advised me that he received an anonymous call at approximately 2300 hours on 2/21/07. The caller stated the two shooters in the gunfight were Ledon Johnttae Ramsey and ▇▇▇▇▇ I later discovered that Ramsey lives with his girlfriend ▇▇▇▇▇ at ▇▇ ▇▇▇▇ which is right next to the location of the shooting.

I collected the casings and booked them into The Hall of Justice Property Vault as evidence.

ROUTE:

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
|---|---|---|---|
| R. Branch | ▇▇▇▇ | 2/22/07 | |

| Robbery | Com. Rel. | A.T. | Homicide | Property | Stat | Admin. | Juv. | Vice | Other: | Assigned: |
|---|---|---|---|---|---|---|---|---|---|---|
| State | SS Capt. | Fraud | C.A. | D.A. | Patrol Capt. | CIB Capt. | Traffic | I.A. | Other: | Total |

RAMSEY-027

| Richmond Police Department 0710 RECORDS Evidence Supplement | | Case Number ▓▓▓▓ |
|---|---|---|
| | | Page Number 1 of 1 |

| Code | 246 P.C. | Location | ▓▓▓▓▓▓▓ |
|---|---|---|---|
| Crime | Shoot at dwelling | Victim | Not Obtained |

**Synopsis:** I went to the listed location to conduct a crime scene investigation regarding shooting at an occupied residence. I examined the victim's residence. I documented the condition of the victim's residence, my findings, and my actions in this report supplement.

**I Observations:** 2/21/07, 1608 Hrs.
Location - ▓▓▓▓▓
Scene - Shot at dwelling
Residence - Downstairs apartment of two story, multi unit apartment building.

I saw the residence had damage consistent with projectile damage to the exterior stuck and to one of the roof's drain pipes. I checked the residence and the surrounding area for evidence of a shooting. I did not locate any other shooting evidence.

**II Photos:** Olympus Digital Camera # 32 (Images downloaded under this case number)
1) View of front of apartment
2) View of projectile damage
3) View of projectile damage

**III Latent Prints:** None

**IV Physical Evidence:** None

| Officer | T. Simmons ▓▓▓ | Typist | tjs | Date Dictated Typed | 2/24/2007 | Routed By P. R. S. | |
|---|---|---|---|---|---|---|---|
| FUTHER | YES | HOMICIDE | ROBBERY | INTEL UNIT | C.C.D.V. | ANALYSIS | REVIEWED BY |
| ACTION | NO | PROPERTY | AUTO THEFT | FAMILY SER. | VICE | RECORDS | |
| | | FRAUD | ADMIN | TRAFFIC | STATE | TOTAL 3 | |
| | | P.S.U. | COM SERVICE | D.A. | PATROL | ASSIGNED Homicide | DATE 3/1/07 |
| | | SCHOOL | MARINE UNIT | TRAFFIC ENG. | | | |

Revised January 6, 2007

RAMSEY-028

# EXHIBIT J

# KROLL

June 25, 2008

1111 Newton St
Gretna, La 77053
Ph 1-800-433-3823 EX 291
FAX 1-504-361-8235
www.kroll.com

To:    Victoria Gibson

From:  Pat Pizzo, B.S.,DABFE
       Director of Toxicology

Re:    THCA Interpretation

This memo is in response to your request for additional information concerning the length of time that
marijuana can stay in the body.

Marijuana is stored in the body longer than many other drugs.  Depending upon the type of use of the
drug, the length of time it can stay in the body fluctuates. Recent scientific data indicate that a person
who is a chronic user, meaning that they use the drug several times a day every day, may continue to
release the drug into the urine for up to six weeks.  The occasional user, meaning an individual who
smokes a couple of puffs over the weekend, will eliminate the drug in less than a week.  Elimination of
drug is expressed in terms of a half life which is the length of time it takes for half of the drug to be
eliminated.  The average half life for marijuana is 24-48 hours for an occasional user and 48-72 hours for
a chronic user.

Kroll utilizes Gas Chromatography coupled with Mass Spectrometry (GC/MS) to identify 11-nor-9-
carboxy-delta-9-tetrahydrocannabinol (THCA).  This is the primary metabolite from marijuana use.

When evaluating specimens close in time, urine concentration is a factor which can complicate the
interpretation.  As urine concentration fluctuates, drug level fluctuates.  Therefore correction for the
dilution or concentration of the urine is essential prior to evaluating whether a donor has reused drug in
the span of time between drug test collections.  The correction for concentration is called a creatinine
normalization procedure.

The specimens listed were submitted for analysis at Kroll and yield the following results:

| Specimen number | Date Collected | THC ng/ml | Creatinine mg/dl | Normalized |
|---|---|---|---|---|
| C00703521 | 6/9/08 | 98 | 161.2 | 60 ngTHC/mgCreatinine |
| C00679883 | 6/14/08 | 117 | 147.9 | 79 ngTHC/mgCreatinine |

It is my opinion that this donor continues to use marijuana.  I base this opinion on the increase in the
normalized level of drug present in the urine specimen collected on 6/14/08 and a urine half life of 48
hours.

Please do not hesitate to contact me if additional information is needed.

Pat Pizzo B.S.,DABFE
Director of Toxicology
Kroll Laboratories

**MMC** Companies

# KROLL

July 11, 2008

450 Southlake Blvd.
Richmond, VA 23236
804 378 9130
Fax 804 379 5919
www.kroll.com

To:    Victoria Gibson
       US Courts- California
       Fax: 510-637 3761

Re:    Request for THCA Interpretation

Marijuana is stored in the body longer than many other drugs.   Depending upon the type of use of the drug, the length of time it can stay in the body fluctuates.  Recent scientific data indicate that a person who is a chronic user, meaning that they use the drug several times a day every day, may continue to release the drug into the urine for up to six weeks.  The occasional user, meaning an individual who smokes a couple of puffs over the weekend, will eliminate the drug in less than a week.  Elimination of drug is expressed in terms of a half life which is the length of time it takes for half of the drug to be eliminated.  The average half-life for marijuana is 24-48 hours for an occasional user and 48-72 hours for a chronic user.

Kroll utilizes Gas Chromatography coupled with Mass Spectrometry (GC/MS) to identify 11-nor-9-carboxy-delta-9-tetrahydrocannabinol (THCA).  This is the primary metabolite from marijuana use.

When evaluating specimens close in time, urine concentration is a factor which can complicate the interpretation.  As urine concentration fluctuates, drug level fluctuates.  Therefore correction for the dilution or concentration of the urine is essential prior to evaluating whether a donor has reused drug in the span of time between drug test collections.  The correction for concentration is called a creatinine normalization procedure.

The specimen listed was submitted for analysis at Kroll yielding the following result:

| Specimen ID | Date Collected | THCA ng/mL | Creatinine mg/dL | Normalized THCA Value |
|---|---|---|---|---|
| C00679893 | 6/22/2008 | 41 | 84.6 | 48 |

This level is consistent with active use of marijuana.

Please do not hesitate to contact me if additional information is needed.

Lisa T. Moak, M.S.
Toxicology Technical Advisor
Kroll Laboratory Specialists, Inc.

MMC Companies

# EXHIBIT K

BP-S205.073     INCIDENT REPORT (CCC'S)     CDFRM
MAR 94
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

## Part I - Incident

| 1. Name of Center | | | | |
|---|---|---|---|---|
| Cornell Pre-Release | | | | |

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time of Incident |
|---|---|---|---|
| RAMSEY, LEDON | ▓▓▓▓ | 7/10/08 | 2205 |

| 8. Place of Incident | 7. Assignment | 8. Quarters |
|---|---|---|
| CORNELL TAYLOR ST | PRE TRIAL | 220-007 |

| 9. Incident | 10. Code |
|---|---|
| VIOLATING A CONDITION OF A COMMUNITY PROGRAM | 309 |

11. Description of Incident: (DATE: & TIME: hours staff became aware of incident)

ON 10 JULY 2008 AT ~~2205~~ WHILE SUPERVISING NIGHTLY
CHORES, MONITOR I, ▓▓▓▓▓▓▓ NOTICED SEVERAL
RESIDENTS OUT OF THEIR ROOMS AND IN THE DINING
AREA. RESIDENT RAMSEY, LEDON REG# ▓▓▓▓ WAS AMONG
THE RESIDENTS MISSING CURFEW

BASED ON THE ABOVE STATED FACTS, I AM CITING
RESIDENT RAMSEY LEDON REG# ▓▓▓▓ WITH PROHIBITED
ACT CODE 309 VIOLATING A CONDITION OF A COMMUNITY
PROGRAM (CURFEW)



| 12. Signature of Reporting Employee | 13. Name and Title (Printed) | a. Date and Time |
|---|---|---|
| ▓▓▓▓ | ▓▓▓▓ | MONITOR I 7/10/08 2255HRS |

| 14. Incident Report Delivered to Inmate by | 15. Date Delivered | 16. Time Delivered |
|---|---|---|
| ▓▓▓▓ | 7-11-08 | 0731 |

# EXHIBIT L

```
**
** DUMPED FROM FBID - 17Jun08 13:38:54
**
061708 1338
IH FI10

RE: QHY.CAFBI0A00.0851'4621.SA DAY,      DATE:20080617 TIME:13:39:12
RESTRICTED-DO NOT USE FOR EMPLOYMENT,LICENSING OR CERTIFICATION PURPOSES
ATTN:SA DAY,281D-SF-141011,MJDM
******************************************************************
FOR CALIFORNIA AGENCIES ONLY - HAS PREVIOUS QUALIFYING
OFFENSE. COLLECT DNA IF INCARCERATED, CONFINED, OR ON
PROBATION OR PAROLE FOLLOWING ANY MISDEMEANOR OR FELONY
CONVICTION. REQUEST KITS AND INFO AT (510) 620-3300 OR
PC296.PC296@DOJ.CA.GOV.
******************************************************************
III CALIFORNIA ONLY SOURCE RECORD
CII/
DOB/            SEX/M  RAC/BLACK
HGT/511  WGT/170  EYE/BRO  HAI/BLK  POB/LA
NAM/01 THOMAS,LAEDWARD
    02 THOMAS,LA EDWARD
FBI/
CDL/
SOC/
* * * *


ARR/DET/CITE:          NAM:01
19870613  CAID ALAMEDA CO
CNT:01    #ARG321
  12025(A) PC-CARRY CONCEALED WEAPON IN VEHICLE
   ARR BY:CAPD OAKLAND
CNT:02
  12031(A) PC-CARRY LOADED FIREARM:PUBLIC PLACE
- - - -
COURT:          NAM:01
19870804  CAMC OAKLAND
CNT:01    #292655
  12025(A) PC-CARRY CONCEALED WEAPON IN VEHICLE
 DISPO:DISMISSED/FOJ/PLEA TO OTHER CHARGE
CNT:02
  12031(A) PC-CARRY LOADED FIREARM:PUBLIC PLACE
*DISPO:CONVICTED
   CONV STATUS:MISDEMEANOR
   SEN: 18 MO   NTHS PROBATION, 90 DAYS JAIL SS
19880409
 DISPO:EARLY DISMISSAL FROM PROBATION
19970929
 DISPO:CONV SET ASIDE & DISM PER 1203.4 PC

* * * *
ARR/DET/CITE:          NAM:01
19871026  CAID ALAMEDA CO
CNT:01    #7097344ARG321
  11350(A) HS-POSSESS NARC CONTROL SUBSTANCE
   ARR BY:CAPD OAKLAND
- - - -
COURT:          NAM:01
19880331  CAMC OAKLAND
CNT:01    #298792
```

```
  11350(A) HS-POSSESS NARC CONTROL SUBSTANCE
 DISPO:DISMISSED/FOJ/PLEA TO OTHER CHARGE
* * * *
ARR/DET/CITE:          NAM:01
19871223  CAID ALAMEDA CO
CNT:01   #7114955ARG321
  12025(B) PC-CARRY CONCEALED WEAPON ON PERSON
   ARR BY:CAPD OAKLAND
CNT:02
  12031(A) PC-CARRY LOADED FIREARM:PUBLIC PLACE
- - - -
COURT:                 NAM:01

19880331  CAMC OAKLAND
CNT:01   #301043
  12025(A) PC-CARRY CONCEALED WEAPON IN VEHICLE
 DISPO:DISMISSED/FOJ/PLEA TO OTHER CHARGE
CNT:02
  12031(A) PC-CARRY LOADED FIREARM:PUBLIC PLACE
 DISPO:DISMISSED/FOJ/PLEA TO OTHER CHARGE
* * * *
ARR/DET/CITE:          NAM:01
19880319  CAID ALAMEDA CO
CNT:01   #8113341ARG321
  11350 HS-POSSESS NARCOTIC CONTROL SUBSTANCE
   ARR BY:CAPD OAKLAND
- - - -
COURT:                 NAM:01
19880428  CASC OAKLAND
CNT:01   #91791
  11350 HS-POSSESS NARCOTIC CONTROL SUBSTANCE
*DISPO:CONVICTED
   CONV STATUS:FELONY
   SEN: 3 YEARS PROBATION, 120 DAYS JAIL
19881203

 DISPO:PROB   ATION MODIFIED
   COM: ADD 60 DS JL
19970924
 DISPO:CONV SET ASIDE & DISM PER 1203.4 PC
19980506
 DISPO:REDUCED TO MISDEMEANOR/17 PC
   COM: CHRG AMENDED TO MISD CHRG 11350(B) HS NUNC PRO
       TUNC TO 9-24-97
* * * * * * * * * * *
**   POTENTIAL FELONY STRIKE ENTRY   **
* * * * * * * * * * *
* * * *
ARR/DET/CITE:          NAM:01
19880319  CAID ALAMEDA CO
CNT:01   #7097344ARG321
   -WARRANT          -FAIL TO APPEAR
  11350 HS-POSSESS NARCOTIC CONTROL SUBSTANCE
   ARR BY:CAPD OAKLAND
   COM: WARR NBR C298792
* * * *
ARR/DET/CITE:          NAM:01
19880320  CAID ALAMEDA CO

CNT:01   #7114955ARG321
```

```
   -WARRANT
  12031(A) PC-CARRY LOADED FIREARM:PUBLIC PLACE
   ARR BY:CAID ALAMEDA CO
CNT:02
   -WARRANT
  12025(A) PC-CARRY CONCEALED WEAPON IN VEHICLE
   COM: CNTS 1-2 FOR DISPO SEE ENTRY OF 122387
        CAIDALAMEDA CO, FILE NBR 301043
* * * *
ARR/DET/CITE:        NAM:01  DOB:19521225
19881115  CAID ALAMEDA CO

CNT:01      #8113341ARG321
   -BENCH WARRANT
  11350 HS-POSSESS NARCOTIC CONTROL SUBSTANCE
   ARR BY:CAPD OAKLAND
   BNCH WARR #91791
* * * *
ARR/DET/CITE:        NAM:02  DOB:19521225
19910903  CAID ALAMEDA CO
CNT:01      #8113341ARB321

   -BENCH WARRANT    -PROBATION VIOL
  11350 HS-POSSESS NARCOTIC CONTROL SUBSTANCE
   ARR BY:CAPD OAKLAND
   BNCH WARR #91791
* * * *
ARR/DET/CITE:        NAM:01  DOB:19521225
20020711  CAPD SAN PABLO
CNT:01      #070KHU165-4402-5620A
  261(2) PC-RAPE BY FORCE/FEAR/ETC
20080415
 DISPO:NO DISPOSITION AVAILABLE
   COM: PHOTO AVAILABLE
   COM: SCN-95721930002
* * * *
APPLICANT:          NAM:02
20080118  CASD SOCIAL SERVICES TLR, SACRAMENTO
CNT:01
  APPLICANT TRUSTLINE REGISTRY EMPLOYEE
   COM: SCN-K54B0180001 ATI-M018THL001
*****************************************************************
*****************************************************************
NOTE:  1 POTENTIAL ENTRIES WITH FELONY CONVICTION DATA WERE

FOUND FOR THIS SUBJECT. SEE ENTRIES IN THE RECORD ANNOTATED
WITH "POTENTIAL FELONY STRIKE ENTRY" FOR DETAILS. THIS RECORD
MAY ALSO CONTAIN ADDITIONAL DATA RELATED TO "STRIKE" CONDITIONS.
*****************************************************************
*****************************************************************
      *    *    *    END OF MESSAGE    *    *    *
```