BARRY J. PORTMAN
Federal Public Defender
JOYCE LEAVITT
Assistant Federal Public Defender
555 12th Street, Suite 650
Oakland, CA 94607
Telephone: (510) 637-3500

Counsel for Defendant RAMSEY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 08-0349 DLJ |
| Plaintiff, ) | |
| ) | |
| v. ) | **DEFENDANT'S OPPOSITION TO** |
| ) | **GOVERNMENT'S APPEAL OF** |
| LEDON JOHNTTAE RAMSEY, ) | **MAGISTRATE'S PRE-TRIAL** |
| ) | **RELEASE ORDER** |
| Defendant. ) | |

## INTRODUCTION

Ledon Ramsey files its opposition to the United States Appeal of Magistrate's Pre-trial Release Order for Defendant Ledon Johnttae Ramsey ("Govt. Motion"). The magistrate ordered Mr. Ramsey released to the half-way house over six weeks ago on June 6, 2008. In fact, Mr. Ramsey has been at the half-way house for the past six weeks. At the time of the detention hearing on June 6, 2008, the magistrate judge personally heard from Mr. Ramsey's cousin, Movita Thomas.[1] As discussed below, the magistrate was so impressed with Movita that he stated that Ledon should stay at the half-way house for eleven days but should then come back come back before the Court on June 17, 2008, and he would consider allowing Ledon to leave the half-way house to live with Movita and her

---

[1] Movita is Ledon's is the first cousin of Ledon's mother and Ledon has considered her and her husband, LaEdward, to be like an aunt and uncle, even though she is actually a cousin.

*U.S. v Ledon Ramsey*, CR 08-344 DLJ;         - 1 -
Opp. to Govt. Mot. to Revoke Release Order

husband LaEdward in Antioch.  Ultimately, on July 21, 2008, the magistrate issued an order allowing Ledon to leave the half-way house to live with his cousin.  The government then decided to appeal.  However, the government apparently does not appeal the July 21, 2008 order allowing Ledon to leave the half-way house to live with his cousin.  Rather the government seems to be appealing the June 6, 2008, order releasing Ledon to the half-way house over six weeks ago. The government bases its request on (1) the fact that Ledon tested positive for marijuana, even though Ledon has asserted, and there has been no findings to the contrary, that the positive tests are from use which occurred prior to Ledon's arrest and subsequent release to the half-way house; and (2) a report by half-way house staff that Ledon was five minutes late for curfew even though Ledon and his room mate have both said that it was his room mate and not Ledon who was five minutes late.

For the reasons discussed below, Ledon Ramsey respectfully asks this Court to deny the government's appeal and allow him to live with his cousin in Antioch, as ordered by the magistrate.

## PROCEDURAL BACKGROUND

On May 28, 2008, Ledon Ramsey was indicted for using a communication facility to facilitate narcotics trafficking in violation of 21 U.S.C. §843(b) (count one), distribution of crack cocaine in violation of 21 U.S.C. §841(b)(1)(B)(iii) (count two), and distribution of crack cocaine within 1000 feet of a high school in violation of 21 U.S.C. §860 (count three).  Ledon was arrested and made his initial appearance before Magistrate Judge Wayne D. Brazil on June 2, 2008.  A detention hearing was held on June 6, 2008.  Prior to the detention hearing, pre-trial services interviewed Ledon Ramsey.  The pretrial services officer who wrote the report recommended that Mr. Ramsey be released from custody.

After a contested hearing at which the magistrate heard the precise arguments which the government now makes to this Court as well as Mr. Ramsey's responses to those arguments, the magistrate judge ordered Ledon released to the half-way house.  As stated above, the magistrate judge also heard from Movita Thomas and was so impressed with her plea that Ledon be released to her custody, that the judge immediately set the matter for June 17, 2008 for further consideration of

*U.S. v Ledon Ramsey*, CR 08-344 DLJ;                - 2 -
Opp. to Govt. Mot. to Revoke Release Order

whether to allow Ledon to leave the half-way house to live with Movita and her husband.[2]

The government did not appeal the magistrate's order releasing Ledon Ramsey from custody at the time that it was issued over six weeks ago.

On June 17, 2008, the parties appeared before Judge Brazil and Ledon asked to be allowed to leave the half-way house to live with Movita. Pretrial services officer Victoria Gibson indicated that Ledon had tested positive for marijuana when he was released to the half-way house. She also indicated that Ledon had a bad attitude and should remain at the half-way house longer. The magistrate decided not to allow Ledon to leave the half-way house at that time. Because the magistrate judge was going to be unavailable for a number of weeks, the matter was immediately set for July 17, 2008, which would be after his return.

On July 17, 2008, the parties appeared again before Judge Brazil. The pre-trial services officer had a document which indicated that the levels of marijuana increased when Ledon was tested a second time, before decreasing when he was tested a third time. At the hearing, Ledon adamantly denied that he had used marijuana since his arrest and release to the half-way house. In response, the magistrate judge commented that his court previously had conducted an extensive hearing in another case and was aware that for individuals with heavy marijuana use, the amounts in the system can appear to increase before decreasing in the system. Magistrate Brazil made no finding that Ledon had used marjuana since his release from custody. However, Movita and LaEdward were not present at the hearing because Movita was really sick. Although Movita and LaEdward were both already on the bond, the magistrate stated that he wanted them to personally appear before releasing Ledon to them because he thought that he remembered being particularly impressed with Movita which was part of his basis for releasing Ledon to her custody.

On July 25, 2008, the matter was heard again. The pretrial services officer stated that she just

---

[2] The background regarding what the magistrate said and did at the various hearings is provided by defense counsel who was present at every hearing. AUSA Garth Hire, who has filed the appeal, was not personally present at the last two hearings on July 17 and July 25. Should the Court require, all of the hearings are recorded on CD's and should be available from the court clerk.

*U.S. v Ledon Ramsey*, CR 08-344 DLJ;     - 3 -
Opp. to Govt. Mot. to Revoke Release Order

1 learned that Ledon had been written up for being 5 minutes late on curfew and that he had not told
2 her. Ledon stated that he had contested the write-up and felt that it was still pending. The
3 magistrate admonished Ledon and indicated that he needed to tell the pretrial services officer
4 everything even if he thought that it did not need to be reported. Meanwhile, Movita and LaEdward
5 Thomas appeared at the hearing, and the magistrate decided to allow Ledon to leave the half-way
6 house to live with the Thomas's in Antioch. After the July 25 2008, hearing, the government filed
7 its appeal.

**ARGUMENT**

**A.   Standard of Review**

The district court reviews de novo a magistrate judge's order regarding detention. *See United States v. Koenig*, 912 F.2d 1190, 1191 1191 (9th Cir. 1990). A motion for revocation or amendment of a detention order "shall be determined promptly." 18 U.S.C. § 3145(b); *see also United States v. Fernandez-Alfonso*, 813 F.2d 1571, 1572-73 (9th Cir. 1987) (remanding to district court to impose appropriate conditions of release as remedy for district court's 30-day delay in deciding motion to amend or revoke detention order).

**B.   Bail Reform Act Standards**

In non-capital cases, pre-trial release is the norm and should be denied only in rare circumstances. *See United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). It is a corollary to the presumption of innocence "that the right to bail should be denied only for the strongest reasons." *Id.* at 1407. Pre-trial detention also implicates the constitutional protections against the denial of liberty without due process and against excessive bail. U.S. Const. amends. V, VIII.

The Bail Reform Act of 1984 mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the person's appearance. *See Motamedi*, 767 F.2d at 1405. "Doubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* A defendant must be released if the conditions can

"reasonably ensure" the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. § 3142(e).

The statute sets out four factors a court must consider:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime or violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "[T]he weight of the evidence is the least important of the various factors." *Motamedi*, 767 F.2d at 1408.

**C.  Rebuttable Presumption**

Where a defendant has been charged with a drug offense punishable by a maximum of at least ten years imprisonment, and the court finds probable cause to believe that the defendant committed the drug offense, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). The presumption shifts only the burden of producing evidence; the ultimate burden of persuasion remains on the government. *See United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992). To rebut the presumption, the defendant need only produce some credible evidence indicating that he is not likely either to flee or to pose a threat to the community. *See id.*

Once the presumption is rebutted, the government must prove by clear and convincing

evidence that no combination of conditions can reasonably assure the defendant's appearance and the safety of the community. *See id.* at 1208. The government may not rely solely on the indictment to justify detention. *See id.*

**D.    The Magistrate Judge's Decision**

The magistrate judge here held a detention hearing on June 6, 2008 and released Ledon Ramsey to the half-way house. He determined, despite the government's arguments, that the presumption had been rebutted and that the government had failed to produce by clear and convincing evidence that no combination of conditions can reasonably assure Ledon's appearance and the safety of the community.

Significantly, the government did not appeal the release order from June 6, 2008. Accordingly, there are no written findings by the magistrate. Ledon now has been out of custody for more than six weeks. He has made all of his appearances and has not endangered the community. Now that Ledon has been given permission to leave the half-way house to live with his cousin and her husband in Antioch, the government incredibly argues that there are *no* conditions of release for Ledon which would satisfy the bail reform act. The government's appeal should be denied.

**E.    The Court Should Deny the Government's Appeal because Ledon Ramsey Poses Neither a Flight Risk Nor a Threat to the Community**

A review of the statutory factors makes it quite clear that Ledon Ramsey poses neither a flight risk nor a threat to the community such that the government's appeal should be denied.

**(1)    The nature and circumstances of the offense charged**

In the indictment, Ledon Ramsey is charged with using a telephone and thereafter distributing 11.4 grams of crack cocaine within 1000 feet of a school on April 15, 2008. This is a drug trafficking offense. It occurred on one day only. It is a relatively small amount of drugs. The drugs were provided to a confidential informant ("CI") who is an old friend of Ledon's mother, who died a year ago after a protracted illness. There are no other drug sales charged and Ledon has no prior convictions whatsoever, or even arrests for the past 13 years.

1    Although Ledon faces a five year mandatory minimum sentence, he has no prior record and is
2    safety-valve eligible.  Should he ultimately decide to plead guilty, Ledon's guidelines are
3    approximately 2 ½ years and that does not include an analysis of the many mitigating 18 U.S.C.
4    §3553 factors which could bring the sentence significantly.  By government counsel's own
5    admissions to defense counsel at the time of his initial appearance on June 2, 2008, Mr. Ramsey is
6    not considered to be a big fish or heavy weight.

**(2) the weight of the evidence against the person**

In this case, there is apparently a video tape which records the distribution by Mr. Ramsey of the crack cocaine to the informant.  However, as this Court well knows, "the weight of the evidence is the least important of the various factors."  *Motamedi*, 767 F.2d at 1408.

Moreover, contrary to the government's assertions, the evidence is not by any means dispositive because it does not address the issue of whether Ledon was entrapped by the CI into distributing crack cocaine to her on the one occasion.   It is undisputed that Ledon Ramsey has no prior criminal record and that the CI was a crack addict who was a friend of Ledon's mother, Sharon, who recently died after a long illness.  Once evidence of entrapment is produced, the government will have to prove beyond a reasonable doubt that Ledon was not entrapped.  It is no so clear that the government will be able to meet this high burden.  As viewed through the defense lense, the evidence is not so overwhelming.

**(3) the history and characteristics of the person**

Ledon Ramsey is a 27 year old man who grew up in Richmond, has no criminal history and has very strong ties to the community.  For the past nine years, Ledon has coached football for a non-profit organization called the Richmond Steelers.  He has coached kids ages six to ten years old, including practices and weekly games.  Ledon is a very involved member of this volunteer organization.

In addition, Ledon has his high school diploma.  He was attending a junior college but dropped out to work six years ago because his girlfriend became pregnant and his mother was in poor health.

*U.S. v Ledon Ramsey*, CR 08-344 DLJ;        - 7 -
Opp. to Govt. Mot. to Revoke Release Order

Ledon had joint custody of his 6 year old daughter, La-Zhanae, until his arrest last month.

Ledon had worked steadily, albeit in a variety of jobs, until his mother died of cancer in June 2007. He provided in-home care for his mother while she was sick for the past year. Before that, he provided in-home care for his great grandfather who died before his mother. Other jobs included driving for Webvan for 1½ years, working for Wendy's, Party City and Home Depot.[3]

Over the past 6 years, Ledon lost most of his family with whom he was extremely close. His developmentally disabled brother, Irricki, died in his sleep a few years ago. Ledon's great grandmother, his grandmother, his great grandfather, also died within the past couple of years. Finally his mother, Sharon, died in June 2007 after a protracted illness. These deaths have been devastating for Ledon who was depressed at the time of the offense. When Ledon's mother died, she left him insurance money worth almost $30,000. Because of his ongoing depression, Ledon did not work.

Ledon has always had a stable living situation and lived at his last apartment for 8 years.

Finally, in viewing his court status, as stated before, Ledon has no criminal history, and no ongoing record of failures to appear at court proceedings. While he has been out of custody in this case, he has made all of his appearances. Furthermore, Ledon was not on probation or parole at the time of his arrest, nor is he under any other criminal justice sentence. His record in the community and while on supervision in this case makes it clear that Ledon is not a flight risk or a danger to the community.

**(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release**

The government tries to bolster its argument that Ledon is a danger by asserting that he is a known member of a gang which "engaged in acts of violence and drug trafficking." Govt. Motion at

---

[3] Ledon Ramsey provided this information at the time of the pretrial services interview although much of it didn't make it into the pretrial report. While the government makes much of Ledon's lack of work history, the fact is that he is only 27 years old, and has had employment since high school until the death of his mother a year ago.

2. But the fact that he has no arrests whatsoever in the past 13 years makes it unlikely that Ledon is really a gang member, or that he himself poses any danger to the community.

The government also discusses the many things found at Ledon's house at the time of his arrest to argue that he is a danger to the community. Govt. Motion at p. 3-4. But these items were discussed at the June 6, 2008, detention hearing as well. Ledon explained, and his family confirms, that it was his grandfather who was a collector of various things, including ammunition, the gun, the police scanner and the bullet proof vest. When the grandfather died, the property from his house was all put in boxes and brought to Ledon's house where it was found at the time of Ledon's arrest. The firearm was so old, it was covered with rust. In addition, the machete was purchased at a flea market as something to hang on the wall. This was discussed at the initial detention hearing. Ledon also told the arresting officers all of this at the time he made his taped statement before being allowed to speak to an attorney.

There was marijuana found at the house and, not surprisingly, Ledon tested positive for the marijuana in his system when he was first released from custody. The presence of the marijuana indicates that Ledon is a user. He has not used since his release from custody over six weeks ago. Moreover, he is not at his house where the items were found and has no intention of going back there. Ledon's lack of criminal history, as well as his conduct over the last six weeks, supports the notion that he will continue to comply with his conditions of release and undermines the government's hysterical assertions to the contrary.

Finally, the government presents a police report regarding a shooting in which an anonymous informant says that Ledon Ramsey was involved. Govt. Motion at Exhibit I. This also was discussed at the initial hearing. Ledon lived in an area in Richmond which was not always safe and, on more than one occasion, shots have been fired near and around his apartment. Ledon, however, has never been involved in any shooting. The incident happened in 2007 and no one was ever questioned or arrested. Ledon denies any involvement in any shooting.

As stated above, Ledon has no intention of returning to Richmond. Rather, the magistrate has

released him to live with his cousin, Movita, in Antioch, California. The magistrate decided to allow Ledon to live with his cousin (who is more like an aunt), after personally observing and listening to Movita, because the magistrate was impressed that she would be a strong custodian and source of support for Ledon. The magistrate's judgment was accurate and correct. Should the Court desire to hear from Movita, personally, she will be present at the hearing on July 25, 2008.

## CONCLUSION

For the reasons stated above, Ledon Ramsey respectfully asks the Court to deny the government's appeal and allow him to leave the half-way house to live with Movita and LaEdward Thomas.

Dated: July 24, 2005

                         Respectfully submitted,

                         BARRY J. PORTMAN
                         Federal Public Defender

                           /S/

                         JOYCE LEAVITT
                         Assistant Federal Public Defender